IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EUGENE JONES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-21-61 |
| COMMISSIONER OF DPSCS, *et al.*, | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Eugene Jones, a Maryland inmate, filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.[1] ECF No. 1. Defendants have moved to dismiss the claims or alternatively, for summary judgment in their favor. ECF No. 21. The Court notified Jones that he had the right to respond to the motion or risk receiving an adverse decision without having been heard. ECF No. 22 (citing *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)). Jones never responded. The Court has reviewed the submissions and no hearing is necessary. Md. Local Rule 105.6 (2021). For the reasons stated below, Defendants' motion is granted.

**I.      Background**

The Complaint concerns a series of fires that broke out at Jessup Correctional Institution ("JCI") while Jones was incarcerated there. Jones accuses Sgt. Greene and Officers Otusajo, Eliason, and Adesiyan of failing to evacuate him timely from the tier, as well as failing to provide proper medical treatment. *See* ECF No. 1 at 2-4. As to Commissioner Harvey, the Complaint

---

[1] Defendants are Warden Allen Gang, Warden Cleveland Friday, Correctional Officer Kazeem Otusajo, Correctional Officer Lawrence Eliason, Sgt. René C. Greene Jr., Correctional Officer Yacoub Adesiyan, and Commissioner of Correction Annie Harvey. The Clerk shall amend the docket to reflect Defendants' full and correct names.

avers that she permitted Wardens Gang and Friday to "cover up" that Jones, an asthmatic, had been left in his cell for hours during the fires. *Id.* As relief, Jones seeks money damages and for the Court to order proper training for JCI staff on adequate fire evacuation procedures. *Id.* at 4.

After the fires, Jones filed a series of Administrative Remedy Procedure ("ARP") grievances against the Defendants which are incorporated into his Complaint. *See* ECF Nos. 1-1, 1-2, & 1-3. Defendants also submit additional record evidence related to fires. The record evidence for each incident is addressed separately.

### A.     June 8, 2020, Fire

On June 8, 2020, a fire had been set on Jones' tier late in the day. Sergeant Olusesan Johnson quickly extinguished the flames and no one was injured. ECF No. 21-3 at 66. Jones contends that Officers Adesiyan and Ojika were on duty, working the tier, and failed to follow fire evacuation procedures. ECF No. 1-3 at 2-3. As a result, Jones avers, the tier became engulfed in smoke and Jones was "left in the cell for dead" for several hours without medical care. *Id.* at 3. But contrary to Jones' claims, neither officer had actually been on the tier that day. ECF No. 21-3 at 8-9, 13. The next morning, Jones was treated in the medical unit for headache, chest pain, smoke inhalation. ECF No. 21-4 at 2. Within two hours, Jones' condition improved, and he was breathing without difficulty. *Id.* at 8.

### B.     June 9, 2020, Fire

Later that same day, another fire broke out around 6:00 p.m. and filed the tier with smoke. ECF No. 21-3 at 63. Certain inmates started the fire and then threw an unknown substance at officers who were trying to escort inmates off the tier by wheelchair. *Id.* at 60, 63. The wheelchair itself caught fire when hit with debris. *Id.* Several inmates had to be treated for smoke inhalation. *Id.* Jones contends that Defendants Eliason and Otusajo had been working on the tier that day, but

once again, prison records show that both officers were posted at other buildings.  *See* ECF No. 21-3 at 55-63.

### C.     June 10, 12, and 13, 2020 Fires

Jones maintains that fires took place on these days, but no specific institutional records corroborate this claim.  ECF No. 1-1.  For June 10, Jones maintains that Lieutenant Ozoemela had been working the tier, and he too failed to follow the emergency fire procedures to evacuate Jones from his cell or get him necessary medical care.  ECF No. 1-2 at 23-24.  Sgt. Greene was on duty on June 12 and 13, but no fire incidents were recorded, nor did Sgt. Greene receive any medical care requests.  ECF No. 21-3 at 34, 36; *see also id.* 34-35 (Officer Adesiyan also working the tier on June 12, 2020, denies any fires or requests for Jones to receive medical attention).

That said, prison records do substantiate that a fire took place on Jones' tier on the evening of June 14, 2020.  ECF 21-3 at 71.  Inmates evidently squirted an unknown substance on a dinner tray cart and lit it on fire, which then ignited a larger area of the tier.  *Id*.  During the confusion, a cell door opened, and inmate Zachary Watson walked onto the tier.  *Id.*  Wilson taunted the officers and spread an oil-like substance on the floor so the officers would lose their footing.  *Id.* at 84-85.  Watson also passed out broom and mop handles to other inmates to use as weapons and started another fire on a lower tier.  *Id.* at 71.  Several officers responded, including Sgt. Greene.  Sgt. Greene was ordered to shut the slots through which inmates were squirting the unknown substance.  He also had to assist in apprehending Watson and securing the tier.  *Id.* at 71, 83-84.

Jones avers that his cell filled with smoke, and he told Sgt. Greene he was having trouble breathing on account of his asthma.  ECF No. 1-1 at 2.  Jones faults Sgt. Greene for not removing him from the cell, and as a result, causing Jones to inhale smoke for hours.  *Id.* at 3.  Jones also alleges that he asked Officer Adesiyan repeatedly to evacuate him from the building, but Adesiyan

3

refused. *Id.* at 3, 9-10. According to Jones, the tier was engulfed in smoke, but no alarms sounded, and no one was evacuated. *Id.* at 10.

Jones visited the medical unit the next day, complaining of smoke inhalation from the fires. ECF No. 21-4 at 10. A nurse on duty examined Jones and concluded that he was not in respiratory distress, did not have any discomfort, and was breathing without difficulty. *Id.* at 12. Jones received a nebulizer treatment and was ordered to continue using his albuterol inhaler and to remain in compliance with his blood pressure medication. *Id.*

## II.    Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Jones was placed on notice that Defendants sought summary judgment. ECF No. 21. He has not responded or otherwise opposed the Court treating the motion accordingly. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Thus, the Court will review the motion as one for summary judgment.

4

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III. Analysis

#### A. Official Capacity Claims Barred Under the Eleventh Amendment

Defendants first argue that to the extent Jones sues Defendants in their official capacities as Maryland state employees, they are immune from suit pursuant to the Eleventh Amendment to the United States Constitution. ECF No. 21-1 at 13. Under the Eleventh Amendment, a state, its agencies, and departments receive protection from suit in federal court brought by its citizens or the citizens of another state, absent the state's consent to be sued. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citing *Florida Department of Health v. Florida Nursing Home Assn.,* 450 U.S. 147 (1981) (*per curiam*)). A suit brought against state employees

5

for actions taken in their official capacities is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).  Thus, any claims against Defendants in their official capacities are barred under the Eleventh Amendment.

> **B.   Supervisor Liability as to Commissioner Harvey and Wardens Gang and Friday**

As to claims brought against Defendants in their individual capacities, the Court next turns to the allegations against Commissioner Harvey and Wardens Gang and Friday.  Jones pursues only Section 1983 claims for which no supervisor can be held liable purely for violations committed by their subordinates. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Under Section 1983, liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Accordingly, supervisory liability attaches only where a plaintiff can show (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's action or inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Viewing the record most favorably to Jones, nothing supports that Commissioner Harvey, or Wardens Gang or Friday, personally participated in any of the fire-related incidents.  Rather, Jones merely asserts, without evidence, that Commissioner Harvey allowed Wardens Gang and

Friday to "cover up" the constitutional violations committed by their subordinate officers. Nor can the denial of Jones' ARPs alone support this condonement liability theory. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (allegation that warden "rubber stamped" grievances was not enough to establish personal participation) (*citing Whitington v. Ortiz*, 307 Fed, Appx. 179, 193 (10th Cir. 2009) (unpublished) ("denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.")). As to Harvey, Gang, and Friday, therefore, summary judgment is granted in their favor.

The Court next turns to the sufficiency of the claims as to the remaining officers in their individual capacities.

### C. Eighth Amendment Claims

#### 1. Officers Otusajo, Eliason, and Adesiyan

When viewing the record most favorably to Jones, the Court finds no evidence that any of the above-named defendants were present during the tier fires from which Jones claims injury. In fact, the record reflects that each were working in a different building, or not at all, when the fires took place. Because no evidence reflects their personal participation in the events concerning Jones, summary judgment must be granted in their favor. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (finding that a plaintiff must affirmatively show that a defendant acted personally in the deprivation of plaintiff's rights) (internal citation omitted).

#### 2. Sgt. Greene

Although the record does not align perfectly with Jones' recollection of events, the Complaint does allege that Sgt. Greene ignored him during a fire that appears to have taken place on the evening of June 14. Jones accuses Sgt. Greene of violating his Eighth Amendment rights

under two distinct legal theories -- failure to protect him from harm and denial of medical care. The Court discusses each separately.

### i. Failure to Protect

The Eighth Amendment to the United States Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To succeed on an Eighth Amendment failure-to-protect claim, the plaintiff must demonstrate that the defendant knew of a specific risk of harm to the plaintiff but was deliberately indifferent to protecting him from such harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). Accordingly, the prisoner must establish that objectively, the risk is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The prisoner must also demonstrate that subjectively, the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.

If the plaintiff demonstrates a defendant's deliberate indifference, an official may nonetheless avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

When viewing the record evidence most favorably to Jones, even if the Court accepts that Jones told Sgt. Greene he was asthmatic, Sgt. Greene responded reasonably to the entire emergency before him. Several prisoners started the fire, and then Watson whipped up inmates

by arming them with brooms and sticks.  Sgt. Greene was ordered to quell the melee.  ECF No. 21-3 at 84-85.  To do so, he had to shut the feed slots from which the flammable liquid was being thrown and secure the tier.  *Id.*  No trier of fact could conclude that Sgt. Greene approached this crisis unreasonably because he failed to attend to Jones at the same time.  Summary judgment on this claim is thus granted in Sgt. Greene's favor.

### ii.  Denial of Medical Care

As to Jones' denial of medical care, a similar analysis applies.  The plaintiff must generate some evidence that the defendant acted with deliberate indifference to his serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference in this context requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff had been aware of prisoner's need for medical attention and failed to either provide such care or ensure the needed care was available.  *See Farmer*, 511 U.S. at 837; *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).  As with the failure-to-protect claim, a defendant may avoid liability if he responded reasonably to the situation.  *Farmer*, 511 U.S. at 844.

This claim too fails because, even assuming Jones' asthma and smoke inhalation constitutes a serious medical need, the record indisputably demonstrates that Sgt. Greene acted reasonably to the unfolding events.  Sgt. Greene was ordered to stop the fire and gain control of the tier.  His focus, therefore, had been to follow those reasonable directives designed to keep the tier safe and secure.  From this, no trier of fact could conclude that Sgt. Greene acted unreasonably in following those orders.  Because the evidence viewed most favorably to Jones simply cannot sustain an Eighth Amendment claim against Sgt. Greene under either liability theory, Sgt. Greene is entitled to summary judgment in his favor.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is granted. The Complaint is dismissed against Defendants in their official capacities and judgment is entered in their favor in their personal capacities.

A separate Order follows.

6/24/22                                                                                                    /S/
_____                                                                      _____
Date                                                                                                   Paula Xinis
                                                                                                       United States District Judge